# Case No. 718.

## BADGER et al. v. BADGER et al.

### [2 Cliff. 137.] [1]

Circuit Court, D. Massachusetts. Oct. Term, 1862.[2]

EQUITY — LACHES — KNOWLEDGE OF FRAUD FOR FIVE YEARS—PLEADING — RESPONSIVE ANSWER —DENIAL BY TWO WITNESSES—FRAUD.

1. Where the answer is responsive to the bill of complaint, and positively denies the matter charged, and the denial has respect to a transaction within the knowledge of the respondent, the answer is evidence in his favor, and unless it is overcome by the satisfactory testimony of two opposing witnesses, or of one witness corroborated by other facts and circumstances, which give to it greater weight than the answer, or are equivalent in weight to a second witness, it is conclusive, so that the court will neither make a decree or send the case to trial, but will dismiss the bill.

[Cited in Hayward v. Eliot Nat. Bank, Case No. 6,273; Godden v. Kimmell, 99 U. S. 202.]

[See Lenox v. Prout, 3 Wheat. (16 U. S.) 520; Union Bank of Georgetown v. Geary, 5 Pet. (30 U. S.) 99; Tobey v. Leonard, 2 Wall. (69 U. S.) 423; Voorhees v. Bonesteel, 16 Wall. (83 U. S.) 16.]

2. Accusations charging that probate accounts which had been settled for a long time were fraudulent, must be specific, and must point out the items of account charged to be false; especially when, as in this case, it appears that all the parties implicated, some of whom had the best means of knowledge in regard to the transaction, were dead.

[Cited in Pulliam v. Pulliam, 10 Fed. 55.]

3. If express fraud be charged, the rule is that he who made it must prove it; so where license was granted by the supreme court of a state for the sale of real estate by administrators, and the complainant, in a bill of equity, prayed that the deeds of conveyance executed pursuant to the license granted, might be declared null and void, nothing less than proof of fraud could possibly avail the complainant, as the court to whom the petition was addressed

was bound to inquire whether debts were due and unpaid by the estate before they granted the license, and, in the absence of fraud, it must be presumed that the finding of the court was conclusive.

4. In many cases courts of equity act upon the analogy of the limitations at law, as where a legal title would, in ejectment, be barred by twenty years' adverse possession; but there is a defence peculiar to courts of equity, founded on lapse of time, where no statute of limitations governs the case.

[Cited in Marsh v. Whitmore. Case No. 9,-122; Godden v. Kimmell, 99 U. S. 202; Pulliam v. Pulliam, 10 Fed. 55.]

[See note at end of case.]

5. In such cases courts of equity often act upon their own inherent doctrine of discouraging antiquated demands, by refusing to interfere where there has been gross laches in prosecuting the claim, or long acquiescence in the assertion of adverse rights.

[See note at end of case.]

6. Where the bill of complaint set up that fraudulent acts had been committed more than thirty years previous to the bill of complaint, but the complainant averred that the same were unknown to him until five years previous to the same, without setting up that the fraudulent acts were in any manner concealed from him, it was held, that a court of equity could not regard in such a case such general allegations of excuse.

[See note at end of case.]

7. If the complainant seeks to avoid the effect of lapse of time, on the ground of concealed fraud, he must set forth, with particularity, when and by what means the fraud was discovered, and the averments so made must be supported by the proofs.

[See Wilcox v. Plummer, 4 Pet. (29 U. S.) 172; Moore v. Greene, 19 How. (60 U. S.) 69.]

[See note at end of case.]

8. In the case of a stale claim, barred by lapse of time, by gross laches, and long unexplained acquiescence in the operation of an adverse right, courts of equity will often treat the lapse of a period less than the one specified in the statute of limitations as a presumptive bar to the claim.

[Cited in Sullivan v. Portland & K. R. Co., Case No. 13,596.]

[See note at end of case.]

[In equity. Bill by James W. Badger and others against Daniel B. Badger and others to recover the interest of complainants in certain real property. The case was heard on plea and replication, and the replication adjudged sufficient, in Badger v. Badger, Case No. 717. The case is now heard on bill and answer. Bill dismissed. On appeal, the supreme court affirmed this decree in 2 Wall. (69 U. S.) 87. See note at end of case.]

This was a bill in equity, wherein the complainant prayed, for an account of the rents and profits of certain real estate, that certain deeds of conveyance might be declared null and void, and that the respondent first named, or his representative, might be ordered to convey to the complainant his interest in certain real estate, and pay over the proper proportion of whatever sums he or they might have received as rents or profits of the same. The bill of complaint was filed September 6, 1858. When filed, David J.

---

[1] [Reported by William Henry Clifford, Esq., and here reprinted by permission.]

[2] [Affirmed by supreme court in Badger v. Badger, 2 Wall. (69 U. S.) 87.]

Badger was also joined in the suit as a complainant, but on the 4th of October following, the bill of complaint as to him was dismissed, on motion of the respondent, for the reason that he was joined in the suit without his authority or consent. A plea in bar was filed by Daniel B. Badger, alleging that the complainant, with others, had previously brought a bill of complaint against him for the same matters, and that the former bill of complaint, after testimony was taken, and other proceedings had, was dismissed with costs for the respondents; but the court decided that the former decree was not a bar to the present suit. Pending those proceedings, the first-named respondent deceased, leaving his son, Erastus B. Badger, as his sole devisee, and the suit having been duly revived as against him, he came in, and made answer to the bill of revivor. Joseph Badger, who was joined as a respondent in the present bill of complaint, after appearing and filing an answer, died also, but the bill of complaint as against him was never revived; and the parties to the suit in all other respects remain as they were described in the original bill.

The former suit, already alluded to, was instituted May 8, 1857, and was dismissed on the day the present bill was filed. In the former suit James W. Badger, Augustus H. Badger, Almira A. Badger, B. P. Sturges and Mary H. B. his wife, M. M. Smith and Eliza M. his wife, Alfred C. Badger, and Jacob Badger were complainants. James W. Badger and D. B. Badger were brothers, and the children of Daniel Badger, of Boston, who died in September, 1818, intestate, leaving a widow, Ann Badger, and ten children, to wit, Daniel B., James W., David I., Augustus H., Jacob, Almira A., Mary H. B., Eliza M., Ann J., and Alfred C. Badger. The complainant admitted that David I., on the 25th of September, 1828, conveyed all his right, title, and interest in and to the estates situated in Broad street and North Federal court to D. B. Badger, and not being a party to the suit, there was no question as to his share involved in the controversy. Ann J. intermarried with Thomas Richardson, and they, by deed of warranty, on the 5th of May, 1830, conveyed all their interest in the estate of the intestate to the first-named respondent. Administration on the estate was granted February 29, 1819, to Daniel B. Badger, and Joseph Badger, his uncle, who was the brother of the intestate.

On the 18th of October following, the inventory was filed in the probate court, by which it appears that the personal estate was appraised at $1,721.10, and the real estate at $12,470. Other personal estate having come to the knowledge of the administrators, to the amount of $714, they caused the same to be appraised, on the 8th of May, 1820, and filed an additional inventory for that amount. Their first administration account was presented September 25, 1820, and was allowed on the 9th of October following. The administrators charged themselves with $6,-742.04, and claimed an allowance for $6,475.-52, leaving a balance of $266.52. The decree allowing that account bore date October 9, 1820, and on the same day, the administrators presented a schedule of the debts due to the estate, amounting to $3,475.72, and also a list of the debts due and owing by the intestate, at his decease, amounting to $6,707.-58. Both of these schedules were received and ordered to be filed and recorded; and on the same day the administrators petitioned the court for leave to sell so much of the real estate of the deceased as would raise the sum of $6,451.83. Pursuant to that petition, the administrators, on the 13th of November following, were empowered to sell so much of the real estate as would raise that sum, and incidental charges, amounting in the whole to $6,511.37. The license to that effect was accordingly granted, and they sold under it, as the complainant alleged, the house and land on Lynde street, the land and store on Greene's wharf, one twenty-fourth of house and land on Fleet street, and house and land in Cambridgeport, amounting in the whole to the sum of $3,635. Certain payments were subsequently made by the administrators, to discharge certain mortgage debts due from the estate; but as all such were included in the second administration account, it is not necessary to specify them.

On March 12, 1827, the widow petitioned that her dower in the real estate of the intestate might be set off to her, and on the 6th of April following, the estates in Broad street and North Federal court were duly assigned to her in full of her dower. None of these preliminary proceedings in the settlement of the estate were called in question. On the 17th of September, 1827, the administrators filed their second administration account. In that account they charged themselves with the proceeds of the sale of the real estate before mentioned, and with other sums, amounting in the whole to $4,354.02, and claimed credit for the sum of $6,810.35, alleged to be for money expended on account of the estate, including $1,309 for services alleged to have been rendered by D. B. Badger as administrator, in settling the estate. The complainant averred that those allegations were false; and that the administrators on the same day filed in the probate court a further list of debts amounting to $2,220, falsely alleging that the same were due from the estate; but the complainant charged that these claims were false, and there was nothing due from the estate to the administrators or either of them, or to the holder of the notes specified in the list of debts, or to any person or persons whatever, for which the estate of the deceased was in any way liable. On the contrary, the complainant alleged that the balance of the account was claimed by D. B. Badger, and that the list of debts was filed by him, in violation of his trust and duty as

administrator, to enable him to obtain possession for his own use and benefit, of all the remaining real estate of the intestate, situated in Boston, to wit, the estate known as the house and land in Distil House square, and the house and land situated in Broad street. Imputing that motive, the charge was, that to accomplish this design, he, on the first Tuesday of March, 1830, petitioned the supreme judicial court for the county of Suffolk for leave to sell so much of the real estate as was necessary to pay the balance of that account, and that such proceedings were had that the court empowered the administrators to sell so much of the same as would raise the sum of $4,676.33, and $50 for incidental charges. Having made these statements, the complainant then charged that the order of the court and the authority to sell were procured by deception and fraud, and alleged, that in order to procure the consent in writing of Thomas Richardson and Ann J., his wife, to the granting of the petition, he purchased all their right, title, and interest in and to the estate; and that in order to procure the consent in writing of Jacob Badger to the same, he purchased all of his interest in and to the estate in Broad street and North Federal court, whereupon those parties consented in writing to the granting of the prayer of the petition; Jacob Badger consenting for himself, and as guardian of Augustus H. Badger. The complainant alleged also that the signature of Almira A. Badger was procured by falsehood and deception, as was also that of her mother, to various papers which the first-named respondent fraudulently used; by means whereof, and of the false representations and fraudulent acts and doings, the authority to sell the estate was granted; that in pursuance of the fraudulent design the house and land in Distil House square were advertised to be sold at auction in Boston, on the 20th of July, 1830, without giving any notice whatever of the place at which the sale was to be made; that the first-named respondent procured one William P. Hart to bid off the estate for him, and that Hart bid $2,820, and that the estate was struck off to him for that sum, which was much less than the value of the premises; that subsequently, D. B. Badger, the first-named respondent, caused to be advertised for sale at auction so much of the real estate in Broad street and North Federal court, subject to the life estate of the widow, as would raise the sum of $786, for the payment of alleged debts and incidental charges, and procured the same person to bid off that property for him. On that occasion, the estate situated in North Federal court was struck off to one Adin Hall for the sum of $400, and only about one-fifth part of the Broad street estate was struck off to William P. Hart; but the complainant alleged, that the respondent pretended to offer those estates for sale at auction again, but without any legal notice, and that the respondent pro-

cured the same person to bid off the Broad street estate for his own benefit, and that the same was struck off to the bidder for $636, being less than one half of the value of the premises, subject to the incumbrance. Both the house and land in Distil House square and the Broad street estate were, as the complainant alleged, conveyed by the administrators to the bidder, without his paying anything therefor, and were by him conveyed to D. B. Badger, the first-named respondent, without any further consideration than what was paid to him by the latter for his fraudulent services. On this last occasion, sale was also made of the house and land on North Federal court, which had previously been bidden off by Adin Hall, and the charge was that the same respondent procured one Daniel Gilpatrick to attend the sale and bid off the property for his benefit; that the same was struck off to the bidder for the sum of $150, being a sum greatly less than the value of the premises, subject to the incumbrances; that the same was conveyed to the bidder without consideration, and was by him in the same way conveyed to the first-named respondent. Two mortgages were made by the said respondent to Samuel D. Parker, who was also joined as a respondent in the bill of complaint. He mortgaged the house and land in Distil House square to Parker on the 1st of July, 1854, to secure the payment of $6,000, payable in three years, and the other mortgage was of the Broad street estate, and was dated February 14, 1855, to secure the sum of $1,000, also payable in three years. Conveyance was also made by D. B. Badger, the first-named respondent, to the city of Boston, of the house and land in North Federal court, and the corporation was also joined as respondent in the bill of complaint.

The complainant also alleged that Samuel D. Parker well knew that his grantor was not possessed of any interest in the estates so conveyed to him, beyond four tenths of the Broad street estate, and one tenth of the other estate. He also alleged that before the city of Boston paid the consideration and took the delivery of the deed conveying the estate in North Federal court, the city was duly notified of the rights of the complainant, and of those under whom he claimed. Further the complainant alleged that on June 11, 1858, six of the other heirs, to wit, Augustus H., Almira A., Mary H. B., Eliza M., Jacob, and Alfred C., transferred to him all their interest in and to the before mentioned estates and the profits and proceeds thereof, whereby he became possessed of the same, both at law and in equity, and he finally alleged, that the fraudulent acts and doings of the first-named respondent were unknown to him or to his coheirs, until within five years before the filing of the bill, and that as soon as the discovery thereof, they requested him, the first-named respondent, to account, pay over what was due, and

convey to them their respective interests in the estates, which he refused to do.

Answer was filed by Joseph Badger, during his lifetime, in which he denied every material allegation of the bill of complaint; that the administrators' accounts or lists of debts were false, or were filed in the probate court with any fraudulent design, were especially denied, and it was averred that they were so rendered and filed because it was the duty of the administrators to render the same. It was admitted, that leave was obtained to sell the real estate of the intestate to pay debts due from the estate, and that the estates mentioned in the bill of complaint were sold in pursuance of the order so obtained, but it was denied, that the license was procured for the fraudulent purpose of enabling the co-administrator to get possession of the estates, or that any fraud or misrepresentation was employed to induce any person to assent to the petition or sale; it was also denied that the sale of the several estates was not duly notified, or that they were not sold at the time they were advertised. Separate answers were also filed by the other respondents, also denying every material allegation of the bill.

J. B. Robb and J. G. Abbott, for complainants.

A person cannot legally purchase on his own account that which his duty or trust requires him to sell on account of another. A purchase by a trustee or per interpositam personam, of the particular property of which he has the sale, carries fraud on the face of it. Blood v. Hayman, 13 Metc. [Mass.] 231. A purchase so made by executors will be set aside. Michoud v. Girod, 4 How. [45 U. S.] 503. The purchase of the estates by Daniel B. Badger was accomplished by a series of frauds. An administrator is bound to plead the special bar of four years, and it will be waste if he does not do it. Scott v. Hancock, 13 Mass. 164, 165; Richmond, Petitioner, 2 Pick. 567; Heath v. Wells, 5 Pick. 140. Mrs. Badger could not bind her wards by giving her consent to the sale of the estates; it would have been a fraud in her to do so, as she was dowager in the estates to be relieved of the mortgage, which secured the debt. Scott v. Hancock, 13 Mass. 168. If the sales were void, the heirs would have a right to the relief prayed for in the bill, and Daniel B. Badger would hold the estate, if living, as tenant in common with his coheirs, or as trustee for them, unless they were barred by the statute of limitations, or want of diligence in prosecuting their claim, as contended for by the defendant. Michoud v. Girod, [supra.] If the sales were voidable merely, then Badger is answerable in this suit as trustee. In equity, length of time is no bar to a trust clearly established, and in cases where fraud is imputed, length of time ought not, upon the principles of justice, to be ad-

mitted to repel relief. Baker v. Whiting, [Case No. 787;] Elmendorf v. Taylor, 10 Wheat. [23 U. S.] 168; Prevost v. Gratz, 6 Wheat. [19 U. S.] 481. In either case, the action may be maintained by the present plaintiff as assignee of his coheirs. Baker v. Whiting, [supra;] Michoud v. Girod, [supra.] The conveyances of the estates in mortgage were void as against the plaintiff.

B. R. Curtis and E. Merwin, for respondents.

The title which the complainant sets up in his bill is invalid, and one that a court of equity will not recognize. The sales of real estate by the administrators at auction, in pursuance of the order of the supreme court, and their deeds, conveyed the legal title to the grantee; and the right of the heirs to avoid this sale is only a right to bring a suit in equity for relief against the alleged fraud, and this right cannot be assigned. Harrington v. Brown, 5 Pick. 519; Prosser v. Edmonds, 1 Younge & C. 489; 2 Story, Eq. Jur. 356. A court of equity will not countenance an assignment made under circumstances like those in the present case, for the purpose of enabling the parties to come in, and support it as witnesses by their own testimony. Bell v. Smith, 5 Barn. & C. 188. No weight will be given to the testimony of witnesses thus made for the case. Myre v. Ludwig, 1 Pa. St. 47–52. Mrs. Sturges could only transfer her interest by a deed in which her husband joined with her, they being residents of Massachusetts. Rev. St. Mass. [1836, p. 405,] c. 59, § 2. Courts of equity will not, upon the suggestion of fraud, undertake collaterally to revise the decree of a competent tribunal; but the party must seek his remedy directly in the forum whose decree he desires to have revised or annulled, by proper proceedings therein. Jennison v. Hapgood, 7 Pick. 1; Paine v. Stone, 10 Pick. 75; Vaughn v. Northup, 15 Pet. [40 U. S.] 1; Laughton v. Atkins, 1 Pick. 535–547. These decrees, therefore, are conclusive upon the complainant in the present controversy, and must be taken to have been just and well founded. This bill does not contain such allegations in regard to fraud as are necessary to induce a court of equity to re-examine the decrees. The particular errors must be specified, and the bill must allege how, when, and in what manner the fraud was perpetrated. Stearns v. Page, 7 How. [48 U. S.] 819; 1 Daniell. Ch. Pr. 424. Fraud will not be presumed, but must be clearly proved; and a court of equity will apply this just rule most rigidly in a case like the present one, where the claim is so stale, and the complainants have neglected to present it, not through any misapprehension, but for purposes of their own, until the means of proving the truth are lost, and the parties most interested are dead. To avoid the effect of the statute of limitation, or the lapse of time, on the ground of concealed

fraud, the complainant must set forth with particularity, when and by what means the fraud was discovered, and the averment must be supported by the proofs. Stearns v. Page, 7 How. [48 U. S.] 829; Wagner v. Baird, Id. 258; Fisher v. Boody, [Case No. 4,814;] Carr v. Hilton, [Id. 2,437;] Moore v. Greene, [Id. 9,763.] See, also, Andrew v. Wrigley, 4 Brown, Ch. 125; Beckford v. Wade, 17 Ves. 94, 97, et seq.; Jenkins v. Pye, 12 Pet. [37 U. S.] 241; Hovenden v. Annesley, 2 Schoales & L. 636. The statute of limitations is a positive bar, and operates in equity, ex vigore suo, as well as at law, in all matters of concurrent jurisdiction, or of a similar nature. 2 Story, Eq. Jur. § 1520, and notes; Farnam v. Brooks. 9 Pick. 212, 243; Wagner v. Baird, 7 How. [48 U. S.] 234, 258; Moore v. Greene, [Case No. 9,763.] And where it is not directly applicable, courts of equity will apply the bar, and will refuse their aid after a lapse of twenty years, and often within a less period. 2 Sugd. Vend. (7th Amer. Ed.) 899; Roberts v. Tunstall, 4 Hare, 257; Gregory v. Gregory, Coop. 201; McKnight v. Taylor, 1 How. [42 U. S.] 168; Bowman v. Wathen, Id. 189; Andrew v. Wrigley, 4 Brown, Ch. 125; Morse v. Royal, 12 Ves. 377.

CLIFFORD, Circuit Justice. Where the answer is responsive to the bill of complaint, and positively denies the matter charged, and the denial has respect to a transaction within the knowledge of the respondent, the answer is evidence in his favor, and unless it is overcome by the satisfactory testimony of two opposing witnesses, or of one witness corroborated by other facts and circumstances, which give to it greater weight than the answer, or which are equivalent in weight to a second witness, it is conclusive, so that the court will neither make a decree nor send the case to trial, but will simply dismiss the bill of complaint. 2 Story, Eq. Jur. (8th Ed.) 1528; Pember v. Mathers, 1 Brown, Ch. 52; Walton v. Hobbs, 2 Atk. 19; Clark's Ex'rs v. Van Riemsdyk, 9 Cranch, [13 U. S.] 160.

Keeping that principle constantly in view, it will become necessary to look at the evidence with some care in order to ascertain what is the true state of the facts in regard to the matters in controversy between the parties. The administrators were lawfully appointed and duly qualified according to law to discharge their duties as such, and it is not denied, that an inventory of the estate of the intestate was duly made and returned, nor is it pretended that, the administrators have not fully and justly administered the personal estate. They settled their first administration account on the 9th of October, 1820, and no attempt is made to impeach the decree allowing the same and ordering it to be recorded. By the copy of the record it appears, that they charged themselves in that account with all the personal estate as

the same was appraised, which, with other charges, as therein specified, amounted to $6,742.04, and were allowed for sums paid out on account of the estate, $6,475.52, which left only a balance of $266.52 in their hands. On the same day they filed a list of debts due and owing by the estate, and a schedule of debts not collected, and supposed to be due to the estate. The debts due to the estate might not be collected, but such as were owed by the estate must be paid, and they accordingly, on the same day, petitioned the court of probate for license to sell real estate for that purpose; and the bill of complaint admits that on the 13th of the same month, they, as such administrators, were authorized to sell so much of the real estate of the intestate as would raise the sum of $6,511.37. Pursuant to that authority, sales of real estate were made by the administrators, to the amount of $3,635, and no fraud or irregularity in that behalf is charged upon the administrators. Other debts to a large amount were due and unpaid by the estate, but the authority conferred upon the administrators to sell the real estate for that purpose, although not exhausted, was not further exercised, and the creditors appear to have acquiesced in the delay. Nothing further was done in the probate court until the 12th of March, 1827, when the widow of the intestate petitioned to have her dower set off to her, and on the 6th of April following, the estates mentioned in the bill of complaint were assigned to her in full of her dower. The second administration account was presented by the administrators on the 10th of September, 1827, and, on the 17th of the same month, the same was allowed and ordered to be recorded. All sums received by the sales of the real estate were duly charged in the account, and it is not even suggested that there is any error in that part of the account. The list of debts filed and recorded on the 9th of October, 1820, included three notes, described as notes in bank, secured by mortgage, dated November 1, 1818, and were carried out in the account as amounting to $3,000. Immediately under the same is also another sum of $345, described as interest on the above. Included in the same list, is a note to D. Pulsifer, for $100, but whether on interest or not does not appear. When the administrators presented their second administration account, they also filed another list of debts due by the estate, amounting in the whole to the sum of $2,220. Three items only are included in that list, consisting of two notes at bank, secured by mortgage, amounting to $2,000, and one year's interest on the above carried out $120; and the remaining item is one note to D. Pulsifer, $100, which plainly is the same note as that specified in the first list of debts. Decree was entered on the same day the second administration account was allowed, ordering the list of debts to be filed and recorded. The former license to sell real estate having

expired by lapse of time, these proceedings in the probate court were necessary to lay the proper foundation for an application to the supreme judicial court for a renewal of the authority to sell. Notice to all persons interested, however, is required before decree, unless the parties voluntarily appear, and assent to the same, or in some way signify their assent in writing, which is often done in probate proceedings, in order to save the expense of publication. Accordingly, both the second administration account and the second list of debts were respectively examined and approved by and in behalf of all the heirs to the estate, and there is no allegation in the bill of complaint that the signatures of the parties to these papers are not genuine, or that they were unfairly obtained. Those writings are signed by each of the four heirs, who were then of age, and by the widow, for herself and the six minor children. The complainant charges that the account was false and fraudulent, and that there was nothing due from the estate to the administrators, or to any other person, but he does not allege that the guardian was guilty of any fraud in approving the account and list of debts, or that her signature to these writings was improperly procured.

Accusations like these, appertaining as they do to probate accounts formally settled more than thirty years ago, ought to be specific, and point out the items of the account which are alleged to be false, especially when, as in this case, it appears that all the parties implicated, and many of those who had the best means of knowledge in regard to the transactions are dead. The administrators charged $1,309 for the time and trouble of the first-named respondent, in settling the estate, and that amount was allowed in the account for his services. A specification of that item as a false one, is made in the bill of complaint; and it is the only one pointed out in that account as false.

Much testimony was introduced to show that D. B. Badger, when he was appointed, agreed to serve without charge, but after the lapse of thirty-five years the written assent of the heirs to the account, certifying that they had examined and approved the same, must be regarded as a conclusive answer to that imputation. Falsity is also imputed to the second list of debts, as recorded on the 17th of September, 1827; but it is evident, upon comparing the same with the list recorded on the 9th of October, 1820, that the two are the same so far as respects the items embraced in the second list. Three mortgage notes were filed in the first list, and but two in the second. Interest to the amount of $345 was charged in the first, as arising on those mortgage notes, but the amount set down in the second list is but $120. Taking the facts as they appear on the face of the papers, it is a reasonable presumption that one of the notes had been paid, and that all the interest on the other two had been paid,

except for the last preceding year before the list was filed. Inference, however, need not be resorted to, as it expressly appears that the first note, and interest on the three notes to the amount of $378.30, were paid by the administrators, and the amount was allowed in the second administration account. Evidently, therefore, the notes were payable with interest, and the clear inference is, that all the accruing interest, except for one year, had been paid, or in some manner liquidated, when the second list of debts was presented. The petition for a renewal of the license to sell real estate, was presented by the administrators on the first Tuesday of March, 1830, to the supreme judicial court for the county of Suffolk. They state in their petition that they obtained such license from the probate court on the 13th of November, 1820; that they refrained from exercising the entire power so granted, at the request of the heirs and their guardians, and in the belief that the price of the real estate would be increased by the delay. The receipt of notice was acknowledged by the widow, heirs, and guardians, and they waived all objection to the granting of the prayer of the petition. Notice having been acknowledged, and all objections waived, the decree ordering the license was entered at the same term in which the petition was presented. Sales were accordingly made of the house and land in Cambridgeport; houses and land in Distil House square; an undivided part of an estate situated in Lynn; house and land situated in North Federal court, subject to the life estate of the widow; and house and land in Broad street, which was also subject to the widow's right of dower. The aggregate amount of the sales was $4,723.50, as fully and regularly appears, by the respective returns of sales duly made and sworn to by the administrators on the 25th of April, 1831, filed in the probate court for the proper county. Having completed these proceedings, and given public notice to all persons interested, the administrators presented their third administration account. Credit was duly given to the estate for the amount received for the sales of real estate; and they were allowed, for payments made and expenses incurred on account of the estate, the sum of $4,774.65, leaving a small balance against the estate. It is not pretended that there is any error in the form of these proceedings, and the pretence, if set up, could not be sustained for a moment, as it is obvious, from an inspection of the record that so far as form is concerned, from the appointment of the administrators to the final settlement of the third administration account, every step taken in the proceedings was correct and according to law.

Four principal objections are taken by the complainant to the legality of the proceedings: first, the one before mentioned, that the charge for services in the second administration account, and the second list of debts pre-

sented on the same day to the probate court, were false and fraudulent; secondly, that the license granted by the supreme judicial court, for the sale of real estate, was fraudulently obtained; thirdly, that the administrators intentionally neglected to give proper notice of the time and place of sale of the estates, for the fraudulent purpose of enabling the first-named respondent to purchase the same at a price below their real value; fourthly, that he employed two persons to attend the sales, and bid off the estates, and that they accordingly attended, and bid off certain parcels of the estates for his use and benefit, and subsequently conveyed the same to their employer, without any compensation except what was paid to them for their illegal services.

Sufficient has already been remarked to show that the first objection cannot be sustained. More than thirty-one years have elapsed since the third administration account was settled, and now, when the administrators who made the account, and presented the list of debts, and the guardian of the complainant, who approved the same, are dead, it is but just to hold that a party making such a charge, under such circumstances, shall be required to prove the charge by full and satisfactory evidence.

Express fraud, also, is the foundation of the second objection, and in respect to that charge the rule is, that he who makes it must prove it. Nothing less than proof of fraud could possibly avail the complainant in this case, as the court to whom the petition was addressed was bound to inquire whether debts were due and unpaid by the estate, before they granted the license, and, in the absence of fraud, it must be assumed that the finding of the court is conclusive. Grignon v. Astor, 2 How. [43 U. S.] 319. Several suggestions are made to show that the license was obtained by fraud, but no one of them is satisfactorily proved. One is, that the notes embraced in the second list of debts were barred by the statute of limitations, but the clear inference from all the circumstances is otherwise, as has already appeared. Those notes were subsequently paid by the administrators, and charged in their third administration account, and no one of the heirs made any opposition to the decree allowing the same, although duly notified to appear and show cause, if any they had, why the same should not be approved. Another suggestion is, that the assent of the widow and heirs to the petition for the license to sell was improperly obtained, but the suggestion is not sustained by any satisfactory proof. Some attempt was made to show that the signature of the widow is not genuine, but the weight of the evidence clearly shows, that she either signed her name, or authorized it to be placed to the instrument.

Satisfactory proof that notice of the time and place of sale was given is exhibited in respect to every parcel sold under the license obtained from the supreme judicial court.

None of the sales effected under the license from the probate court are drawn in question, and of course nothing need be remarked in regard to those sales.

Testimony was introduced by the complainant, tending to prove that the first-named respondent, who was one of the administrators of the estate, employed one William P. Hart to attend the sale of real estate on the 20th of July, 1830, for the purpose of bidding off, for his own use and benefit, some portion of the estate which was advertised to be sold on that day, and that he accordingly attended the sale, and on that occasion he was the highest bidder, on the parcel situate in Distil House square, and the same was struck off to him for the sum of $2,820, as specified in the third administration account. The administrators conveyed the same to William P. Hart, on the 23d of July, 1830, and, on the 14th of March, 1831, the grantee in that deed conveyed the same to the first-named respondent. Evidence was also introduced by the complainant, tending to show that he procured in like manner the same person, and also one Daniel Gillpatrick, to attend the sale of the real estate advertised to be sold on the 12th of March, 1831, to bid off some portion of the estate for his own use and benefit, and that the former was the highest bidder for the house and land situated in North Federal court, and that the same was struck off to him, subject to the life estate of the widow, for the sum of $150, and that the latter was the highest bidder for the house and land situated in Brown street, subject to the widow's right of dower, and the same was struck off to him for the sum of $613, as appears by a copy of the proceedings, as recorded in the probate court on the return of the sales. Conveyances were duly made by the administrators to the respective bidders, and they subsequently conveyed their respective interests to the first-named respondent. A fraudulent design is charged by the complainant in respect to the employment of these persons to bid on the real estate, but proof to that effect is wholly wanting in the record. On the contrary, the evidence shows to the satisfaction of the court, that the sales were properly advertised, and in all other respects properly conducted, and that every reasonable exertion was made by the administrators to procure the attendance of bidders, and to obtain the best prices for the estates. The evidence clearly shows that the senior administrator neither employed those persons to bid, or had any knowledge that they or either of them had been employed by his associate. It is insisted by the complainant on this branch of the case, that the sales to Hart and Gillpatrick were absolutely void, because in bidding off the same they acted as the agents of the administrators. Michoud v. Girod, 4 How. [45 U. S.] 552.

On the other hand, it is insisted by the respondents, that inasmuch as the case made

in the bill of complaint is one of actual, positive fraud, that the complainant is not entitled to relief, unless he proves those allegations; that having charged actual fraud, he cannot now abandon that ground and show himself entitled to relief by proving constructive fraud, arising out of the peculiar relation between himself and the first-named respondent. Support of that proposition is certainly found in Eyre v. Potter, 15 How. [56 U. S.] 54; but in the view taken of this case, it will not be necessary to decide that question in the present controversy, because I am of the opinion that the claim of the complainant is barred by lapse of time. Courts of equity, says Mr. Justice Grier, in Wagner v. Baird, 7 How. [48 U. S.] 258, in cases of concurrent jurisdiction, consider themselves bound by the statutes of limitation, which govern courts of law in like cases, and this rather in obedience to the statutes than by analogy. In many other cases they act upon the analogy of the limitations at law, as where a legal title would, in ejectment, be barred by twenty years' adverse possession, courts of equity will act upon the like limitation, and apply it to all cases of relief sought upon equitable titles, or claims, touching real estate. Moore v. Greene, [Case No. 9,763;] 2 Story, Eq. Jur. (8th Ed.) 1520; Farnam v. Brooks, 9 Pick. 243. But, says the same learned judge, there is a defence peculiar to courts of equity, founded on lapse of time, and the staleness of the claim, where no statute of limitation governs the case. In such cases, courts of equity often act upon their own inherent doctrine of discouraging, for the peace of society, antiquated demands, by refusing to interfere, where there has been gross laches in prosecuting the claim, or long acquiescence in the assertion of adverse rights. 2 Sugd. Vend. (7th Amer. Ed.) 899; Roberts v. Tunstall, 4 Hare, 257; Jenkins v. Pye, 12 Pet. [37 U. S.] 241; Hovenden v. Annesley, 2 Schoales & L. 636; Sullivan v. Sullivan, [Case No. 13,598;] McKnight v. Taylor, 1 How. [42 U. S.] 168. Long acquiescence and laches by parties out of possession, are productive of much hardship and injustice to others, and cannot be excused, but by showing some actual hindrance, or impediment, caused by the fraud or concealment of the party in possession, which will appeal to the conscience of the chancellor. Sales in this case, which the complainant seeks to set aside, were made in 1830 and 1831, more than thirty years ago, and no reason or excuse is assigned for the delay. Present suit was instituted on the 6th of September, 1858. Complainant, it is true, alleges that the fraudulent acts and doings of Daniel B. Badger were unknown to him until within five years last past, but the bill of complaint does not allege that the same were in any manner concealed from him, or when or by what means the fraud was discovered. Such general and unsubstantial allegations of ex-

cuse cannot be regarded by a court of equity as sufficient. On the contrary, it is well settled, that if the complainant would avoid the effect of lapse of time, or of the statute of limitations, on the ground of concealed fraud, he must set forth with particularity when and by what means the fraud was discovered, and the averment so made must be supported by the proofs. Stearns v. Page, 7 How. [48 U. S.] 829; Wagner v. Baird, Id. 258; Fisher v. Boody, [Case No. 4,814;] Carr v. Hilton, [Id. 2,437;] Moore v. Greene, [Id. 9,763.] Many of the heirs have been examined as witnesses, and not one of them has testified to any concealment on the part of the respondent, or any ignorance upon the subject. His counsel insist that the claim is not barred, because the properties were subject to a life estate which did not terminate until the 24th of September, 1855, when the widow of the intestate deceased; but I am of the opinion that the continuance of her life estate has no effect upon the question of limitation in this case. The purchasers took an absolute title in the estates as against the complainant, and those under whom he claims; and in equity the rule is, that the question of acquiescence is not affected by the circumstance that the particular estate had not determined during the lapse of time, since the conveyance might at any time have been avoided, if obtained by fraud, as alleged. Sullivan v. Sullivan, [supra;] Andrew v. Wrigley, 4 Brown, Ch. 125; Beckford v. Wade, 17 Ves. 94, 97; Jenkins v. Pye, 12 Pet. [37 U. S.] 241; Hovenden v. Annesley, 2 Schoales & L. 636; Bowman v. Wathen, 1 How. [42 U. S.] 193.

Applying these principles to the present case, I am of the opinion that the claim in this case is barred by the limitation of twenty years. When the sales were made, the complainant, and those under whom he claims, were minors, and consequently within the exception of the statute, but the proof is full to the point, that all of them, except the complainant, had been of age more than twenty years when the first suit in this case was commenced. The age of the complainant does not distinctly appear, and it may be that he had not been of age twenty years on the 8th of May, 1857, when the former suit was commenced. Proofs on this point are not clear, and perhaps it would be going too far to say that his original share of one tenth is barred by that limitation. But if that be so, still I am of the opinion that the entire claim is barred, as a stale claim, upon the ground of gross laches, and long unexplained acquiescence in the operation of an adverse right. Under such circumstances courts of equity will often treat a lapse of a less period than the one specified in the statute of limitations as a presumptive bar to the claim. Smith v. Clay, Amb. 645; Kane v. Bloodgood, 7 Johns. Ch. 93; Dexter v. Arnold [Case No. 3,859;] Prevost v. Gratz, 6 Wheat. [19 U. S.] 481; 2 Story, Eq. Jur. (8th

Ed.) § 1520. Another answer to the claim may also be given, which is as applicable to the complainant as to those under whom he claims. Actions for lands sold by executors, administrators, or guardians cannot be maintained in this state by any heir or other person claiming under the deceased testator or intestate, unless the same be commenced within five years next after the sale. Rev. St. Mass. c. 71, § 37, p. 458; Id. c. 72, § 19, p. 461. Objection is made by the complainant that this limitation cannot operate, because it is not set up in the answer. But the objection, I think, is not well taken, as applied to the present case. Courts of equity, says Judge Story, act upon the analogy of the law, as to the statute of limitations, and will not entertain a suit for relief, if it would be barred at law. If the objection does not appear on the face of the bill, it may be taken by way of plea or by way of answer; but the clear inference is, that the learned author did not regard the plea or answer as necessary when the objection was apparent on the face of the bill of complaint. Story, Eq. Pl. § 503; Coop. Eq. Pl. 167; Mitf. Pl. by Jeremy, 212; Maxwell v. Kennedy, 8 How. [49 U. S.] 222; Hovenden v. Annesley, 2 Schoales & L. 638.

In view of the whole case, I am of the opinion that the complainant is not entitled to relief, and the bill of complaint is accordingly dismissed with costs.

[NOTE. An appeal was taken from this decree to the supreme court by the complainants, and the judgment was thereupon affirmed, the court, by Mr. Justice Grier, holding that:

["Courts of equity, in cases of concurrent jurisdiction, consider themselves bound by the statutes of limitation which govern courts of law in like cases, and this rather in obedience to the statutes than by analogy.

["In many other cases they act upon the analogy of the like limitation at law. But there is a defense peculiar to courts of equity founded on lapse of time and the staleness of the claim, where no statute of limitation governs the case. In such cases, courts of equity act upon their own inherent doctrine of discouraging, for the peace of society, antiquated demands; refuse to interfere where there has been gross laches in prosecuting the claim or long acquiescence in the assertion of adverse rights. Long acquiescence and laches by parties out of possession are productive of much hardship and injustice to others, and cannot be excused but by showing some actual hindrance or impediment, caused by the fraud or concealment of the parties in possession, which will appeal to the conscience of the chancellor.

["The party who makes such appeal should set forth in his bill specifically what were the impediments to an earlier prosecution of his claim, how he came to be so long ignorant of his rights, and the means used by the respondent to fraudulently keep him in ignorance, and how and when he first came to a knowledge of the matters alleged in his bill; otherwise, the chancellor may justly refuse to consider his case, on his own showing, without inquiring whether there is a demurrer or formal plea of the statute of limitations contained in the answer.

["The bill in this case is entirely defective in all these respects. It is true there is a general allegation that the 'fraudulent acts were unknown to complainant till within five years past,' while the statement of his case shows clearly that he must have known, or could have known, if he had chosen to inquire, at any time in the last thirty years of his life, every fact alleged in his bill. That his mother was entitled to dower in the land if the sale was set aside was no impediment to his pursuit of his rights, while her death may have removed the only witness who was able to prove that his complaint of fraud was unfounded, and that it was by the consent and desire of the family that the property was kept in the family name by the only one who was able to advance the money to pay the debts of the deceased,—a fact fairly to be presumed from her silence and acquiescence for twenty-four years." Badger v. Badger, 2 Wall. (69 U. S.) 87.

[Also see Marsh v. Whitmore, 21 Wall. (88 U. S.) 178; Twin-Lick Oil Co. v. Marbury, 91 U. S. 587; Hayward v. Eliot Nat. Bank, 96 U. S. 611; Godden v. Kimmell, 99 U. S. 201; Wood v. Carpenter, 101 U. S. 135; Etting v. Marx, 4 Fed. 673; Livingston v. Ore Bed, Case No. 8,418. The decree of the supreme court was distinguished in James v. Atlantic Delaine Co., Id. 7,177, and Forbes v. Overby, Id. 4,928a.]

BADGER, (BYRD v.) See Cases Nos. 2,265 and 2,266.

BADGER, (EDDY v.) See Case No. 4,276.

BADGER, (KENDALL v.) See Case No. 7,-691.

BADGER, (ORR v.) See Case No. 10,587.

BADGER, (REYNOLDS v.) See Case No. 11,726.

BADGER, (UNITED STATES v.) See Case No. 14,493.